UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>    Plaintiff,   )<br>   )<br>v.   )<br>   )<br>ISAIAH CHASE,   )<br>    Defendant.   ) | CAUSE NO.: 2:18-CR-78-JTM-JEM |

**FINDINGS, REPORT, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Defendant's Motion to Suppress Evidence [DE 19], filed December 19, 2018. Defendant requests that the seizure of a handgun from Mr. Chase's car on July 5, 2018, be suppressed because, he alleges, the search was warrantless, without the consent of Defendant, and constituted an unreasonable search and seizure.

On January 24, 2019, Senior District Court Judge James T. Moody entered an Order [DE 22] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Finding that the search was conducted after Defendant was arrested in accordance with established inventory procedures, the Court recommends that the District Court deny the Motion to Suppress.

**I.   Background**

Defendant Isaiah Chase is charged by way of a single count criminal complaint, filed on July 7, 2018, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On December 19, 2018, Defendant filed the instant Motion to Suppress, requesting that the physical evidence of the handgun located during the search of his vehicle be suppressed because the search was warrantless, done without the consent of Defendant, and was seized allegedly in violation of his Fourth Amendment rights. The Government filed a response on January 9, 2019. On February 20, 2019, the Court held an evidentiary hearing on the motion, receiving testimony and other evidence. On February 27, 2019, both parties filed post-hearing briefs. No responses to those briefs was filed within the time allotted to do so.

## II.    Hearing Testimony

On July 5, 2018, Special Agent K. Fertig, an agent in the High Crime Unit within the Lake County Drug Task Force, was driving an unmarked car in the Bronx area of Gary, Indiana. Tr. 6:6-17, DE 28. While stopped at a stop sign, he saw a vehicle pass in front of him at a high speed, and pulled out to follow it. *Id*. at 6:22-24. He followed the car, noticing that it was driving in between both lanes, and concluded that it was going more than 55 miles per hour, an excessive speed for the area where the posted limit was 35 miles per hour. *Id*. at 8:3-18. Fertig testified that he decided to perform a traffic stop, and the driver pulled the car over when he turned his emergency lights on. *Id*. at 9:4-13. He further testified that a second officer from his unit had also noticed the excessive speed of the car and was behind Fertig's vehicle when he pulled the car over. *Id*. at 9:23-25.

Fertig testified that he approached the car and spoke with the driver, identified as Defendant Isaiah Chase, who provided him with an identity card and registration for the vehicle. *Id*. at 10-11. Fertig testified that after handing him the documents, he asked Defendant to keep his hands on the steering wheel, but since Defendant was still reaching around inside the car, Fertig asked him to step out of the car, which Defendant did. *Id*. at 12-13. Fertig testified that after Defendant stepped out

2

of the car, Fertig ran Defendant's information through police databases, finding that Defendant was on federal supervised release and concluding that he did not have a valid driver's license issued by the State of Indiana. *Id*. at 13:6-17. He testified that at that point the totality of the circumstances led him to decide to place Defendant under arrest, and Defendant was placed in wrist restraints and put in the back of Fertig's police vehicle. *Id*. at 13:18-14:9. Fertig testified that he then called for a tow truck to remove the car from the road. *Id*. at 14:10-24. Fertig testified that after Defendant was arrested, Fertig began an inventory search of the vehicle looking for valuables prior to the tow truck arriving, and found a handgun wedged between the center console and the front driver's seat, as well as several other things that he documented on the inventory sheet. *Id*. at 15:10 - 18:22.

Defendant testified at the hearing that he was pulled over essentially as Fertig testified, but that Fertig searched his vehicle after he was asked to step out of the car, before his information was run and before he had been placed under arrest. *Id*. at 31:12-39:21. Defendant testified that he was not in handcuffs while the search was occurring, that he had not given any consent for the detective to search his car, and that when he questioned the other officers about why they were searching his car, they "basically waved it off by telling me if I have nothing in the car, I have nothing to worry about." *Id*. at 39:10-20. Defendant testified that Fertig told the other officers to arrest him for reckless driving after he found the gun in the car. *Id*. at 39:25-40:3.

The Court finds the law enforcement officer's version of events to be credible. Fertig gave straightforward answers to the questions asked, calmly and without hesitation. His recollection of the events comports with someone for whom this was a traffic stop conducted in accordance with his training and experience as a police officer, as part of his usual course of duties. There is no dispute over the fact that Defendant was traveling at an excessive speed or that he was on supervised

3

release on July 5, 2018, and no dispute that Defendant produced an identification card rather than a license when asked. Furthermore, it does not appear to the Court that the officer or counsel for the Government knew what Defendant's testimony was going to be before the hearing or what portion of the search was being contested, since the briefing and argument adduced prior to Fertig taking the stand only contained bare assertions that the search was warrantless and unreasonable. Counsel for the Government represents that the other officers at the scene on July 5, 2018, if called, would give testimony that corroborates Detective Fertig's recitation of the chain of events. Defendant, on the other hand, has reason for prevarication, and the event in question was unusual and anxiety-provoking for him, since he knew that he was not permitted to have a firearm in his possession and, if found, he would be put into custody. *Id*. at 43:2-18. Accordingly, the Court finds that Detective Fertig's search of the vehicle driven by Defendant happened after Defendant was placed under arrest.

### III.    Analysis

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Cons. amend. IV. Searches conducted without a warrant are per se unreasonable unless an exception applies, and one exception to the warrant requirement is a post-arrest inventory search. *United States v. Sholola*, 124 F.3d 803, 818 (7th Cir. 1997) ("Inventory searches 'are now a well-defined exception to the warrant requirement of the Fourth Amendment.' The Supreme Court, '[i]n applying the reasonableness standard adopted by the Framers . . . has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or

4

protecting the car and its contents.'") (quoting *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976)).

Defendant argues that the weapon seized during the search of the car on July 5, 2018, should be suppressed pursuant to the Fourth Amendment. The Government argues that the search was permissible because it was conducted as part of an inventory search.

There are two requirements that make a warrantless inventory search permissible under the Fourth Amendment: "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *United States v. Velarde*, 903 F.2d 1163, 1165 (7th Cir. 1990) (citing *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983); *United States v. Griffin*, 729 F.2d 475, 481 (7th Cir. 1984)).

Detective Fertig testified that he and another officer observed a car being driven recklessly by Defendant and stopped the vehicle, and thereafter that he made a determination to arrest Defendant and had him placed in handcuffs, and a tow truck was called. After that, he performed an inventory search pursuant to the written policy of the Sheriff's office. Defendant testified that the search began before he was in handcuffs, before he had been lawfully arrested. As described above, Detective Fertig's testimony is more believable, and the Court concludes that the search of the vehicle occurred after Defendant was lawfully arrested.

Defendant also argues that the search was not conducted pursuant to policy. Lake County Sheriff's Department's policy for motor vehicle inventories provides that an officer "may conduct a motor vehicle inventory without a warrant or probable cause when[] the vehicle has been lawfully

5

seized or impounded pursuant to the arrest of the driver." Lake County Sheriff's Department General Order 2009-02 ¶ 16.10.03(A)(1), Gov. Ex. 2. Defendant argues that he had not been arrested at the time of the search, so it was not performed in accordance with the established inventory procedures. However, the Government has established that Defendant was under arrest at the time of the search. Defendant has not argued that anything else about the physical search performed by Fertig was not pursuant to policy.

## IV. Conclusion

Based on the foregoing, the Court **RECOMMENDS** that the District Court **DENY** the Defendant's Motion to Suppress Evidence [DE 19].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 4th day of April, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record